## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In re: | ) | **Case No.: 21-80593** |
| | ) | |
| **LYNN MARIE LOTZ and CHARLES** | ) | **Honorable Thomas L. Perkins** |
| **EDWARD LOTZ,** | ) | **Chapter 11 Proceeding** |
| | ) | |
| Debtors. | ) | |

## SUBCHAPTER V PLAN OF REORGANIZATION FOR LYNN MARIE LOTZ AND CHARLES EDWARD LOTZ DATED DECEMBER 21, 2021

## ARTICLE I
## INTRODUCTION

This is the Subchapter V Plan of Reorganization in the Chapter 11 Case of Debtors Lynn Marie Lotz and Charles Edward Lotz (the "Plan").[1] This Plan is filed under Subchapter V of Chapter 11 of the Bankruptcy Code.

Pursuant to the Plan, Debtors Lynn Marie Lotz and Charles Edward Lotz ("Debtors") propose to pay their Creditors, after confirmation and the Effective Date of the Plan, from a combination of monies that Debtors have accumulated during this Chapter 11 Case and future disposable income received by Debtors for five (5) years following the Effective Date of the Plan unless otherwise provided herein.

Debtors submit this Plan to all of their Creditors in order to comply with provisions of the Bankruptcy Code requiring information substantially similar to a disclosure statement and submission of information necessary for Creditors to arrive at an informed decision in exercising their right to vote for acceptance or rejection of the Plan.

This Plan provides detailed information regarding the terms for payment of Claims and other information designed to assist Creditors and equity security holders in determining whether to vote to accept the Plan. The information in this Plan was provided by Debtors and has not been audited, compiled, or otherwise reviewed by any third party. To that end, Debtors specifically disclaim any liability for unintentional errors and inadvertent inaccuracies contained in this Plan.

---

[1] All capitalized terms in the Plan shall, unless otherwise defined herein, have the meanings ascribed to them in Article II of the Plan and the Code.

This Plan provides for seven Classes of Secured Claims; one Class of Priority Claims; one Class of Unsecured Claims; and one Class of Allowed Interests.  This Plan also provides for the payment of Subchapter V Trustee fees, Administrative Expense Claims, and Priority Tax Claims.

All Creditors should refer to Article IV of this Plan for information regarding the precise treatment of their Claims.

**YOUR RIGHTS MAY BE AFFECTED. YOU SHOULD READ THESE PAPERS CAREFULLY AND DISCUSS THEM WITH YOUR ATTORNEY, IF YOU HAVE ONE. IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE TO DETERMINE AND EVALUATE YOUR RIGHTS UNDER THIS PLAN.**

**A.** **Purpose of this Document.** The Plan describes: (i) historical information regarding Debtors and the events leading to the Case and significant events during the Case; (ii) how the Plan proposes to treat Claims of Creditors, i.e. what you will receive on your Claim if the Plan is confirmed and how issues on the allowance of Claims will be addressed; (iii) how Debtors will put the Plan into effect, why Debtors believe that the Plan is feasible, and how the treatment of your Claim under the Plan compares to what you would receive in a bankruptcy liquidation; (iv) who can vote on or object to the Plan; (v) what factors the Bankruptcy Court will consider when deciding whether to confirm the Plan; and (vi) the effect of confirmation of the Plan.

**B.** **Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing.** The Court has not approved the adequacy of the information in the Plan. Circulation of the Plan to you should not be deemed tantamount to the Court's approval of the Plan. This section describes the procedures under which the Plan will or will not be confirmed.

1. **Time and Place of the Hearing to Confirm the Plan/Approve Adequacy of Information in the Plan.** The Court will conduct the hearing on confirmation of the Plan and final approval of the adequacy of the information in the Plan on _____ at __:**00 a.m.** in the United States Bankruptcy Court for the Central District of Illinois, 100 N.E. Monroe Street, Peoria, Illinois 61602

2. **Deadline for Voting to Accept or Reject the Plan.** If you are entitled to vote to accept or reject the Plan, vote on the enclosed Ballot and return the Ballot in the enclosed envelope via U.S. Mail, overnight, electronic mail, or hand delivery to Robert E. Eggmann, Thomas H. Riske, Carmody MacDonald, P.C., 120 South Central Ave., Suite 1800 St. Louis, Missouri 63105. Your Ballot must be received by **5:00 p.m. prevailing Central Time** on _____, or it will not be counted. See Article VIII below for a discussion of voting eligibility requirements,

3. **Deadline for Objecting to the Adequacy of the Information in the Plan and Confirmation of the Plan.** Objections to the adequacy of the information in the Plan and/or to confirmation of the Plan must be filed with the Court and served upon Robert E. Eggmann, Thomas H. Riske, Carmody MacDonald,

2

P.C., 120 South Central Ave., Suite 1800, St. Louis, Missouri 63105 on or before _____.

4.   **Identity of Person to Contact for More Information.** If you want additional information about the Plan, you should contact Thomas Riske, Carmody MacDonald, P.C., 120 South Central Ave., Suite 1800, St. Louis, Missouri 63105, (314) 854-8600 either in writing or by telephone. Keep in mind, Mr. Riske cannot give you legal advice or assist you in determining how to vote on the Plan.

## ARTICLE II
## GENERAL PROVISIONS

A.   **Definitions and Rules of Construction.** The definitions and rules of construction stated in Code §§101 and 102 apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions:

1.   **Administrative Expense Claim** shall mean a Claim against Debtors for costs or expenses of administration of Debtors' Estate under Code §§ 503(b) and 507(b), including, but not limited to, the actual and necessary expenses incurred on or after the Petition Date of preserving Debtors' Estate and operating the business of Debtors, including, but not limited to, compensation and reimbursement awarded to professionals under Code § 330 and the Subchapter V Trustee.

2.   **Allowed** as used in reference to a Claim, shall mean any Claim, that (a)(i) was filed on or before the Bar Date, or (ii) was or hereafter is scheduled by Debtors as both (x) liquidated, and (y) neither disputed nor contingent, and (b)(i) is not subject to any objections in the Bankruptcy Court, (ii) is not subject to any requirement for application and approval by the Bankruptcy Court, and (ii) as to which any application or objection has been determined by a Final Order and (c) is allowed pursuant to provisions of the Plan. In no event shall a Claim be deemed Allowed if such Claim has been objected to or is objected to after entry of the Confirmation Order unless or until such Claim has been determined by a Final Order of the Bankruptcy Court. Unless otherwise specified, no Allowed Claim shall include interest on the principal amount of such Claim from and after the Petition Date, late fees, attorneys' fees, Court costs or other costs, or other charges.

3.   **Asset** shall mean all of the rights, title, and interests of a Debtor in and to property of whatever type or nature, including, without limitation, real, personal, mixed, intellectual, tangible, and intangible property.

3.   **Ballot** means the form or forms distributed to holders of Impaired Claims entitled to vote on the Plan on which is to be indicated the acceptance or rejection of the Plan.

4.   **Bankruptcy Code** or **Code** shall mean Code §§ 101-1550, effective as of the Petition Date.

5.     **Bankruptcy Court** shall mean the United States Bankruptcy Court for the Central District of Illinois, in which the Case is pending.

6.     **Bankruptcy Rules** shall mean the Federal Rules of Bankruptcy Procedure adopted by the Supreme Court of the United States, as amended from time to time.

7.     **Bar Date** shall mean the deadlines established for the filing of Claims in the Case pursuant to an Order of the Bankruptcy Court, the Code or applicable law.

8.     **Business Day** shall mean a day other than a Saturday, Sunday, federal holiday, or other day on which banks are authorized or required to close in the State of Illinois.

9.     **Case** shall mean that certain Chapter 11 bankruptcy case captioned *In re Lynn Marie Lotz and Charles Edward Lotz,* presently pending before the Bankruptcy Court as case number 21-80593.

10.     **Cash** shall mean the legal currency of the United States and equivalents thereof.

11.     **Chapter 11** shall mean Chapter 11 of the Bankruptcy Code.

12.     **Claim** shall mean (a) any right to payment from Debtors, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, unsecured, pre-petition or post-petition; or (b) any right to an equitable remedy for breach of performance if such breach gives rise to a right to payment from Debtors, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, unsecured, pre-petition or post-petition.

13.     **Claimant** shall mean any Person who has a Claim against Debtors.

14.     **Class** shall mean Class 1, 2, 3, 4, 5, 6, 7, 8 and 9 as described in Article **IV** of this Plan.

15.     **Confirmation Date** shall mean the date on which the Confirmation Order is entered by the Clerk of the Bankruptcy Court on the docket for the Case.

16.     **Confirmation Order** shall mean the Final Order entered by the Bankruptcy Court confirming the Plan pursuant to Code § 1129.

17.     **Court** shall mean (a) the Bankruptcy Court, (b) any Court having jurisdiction to hear appeals or certiorari proceedings therefrom, and (c) any other federal or state Court having jurisdiction over matters addressed in or related to this Plan.

18.     **Creditor** shall mean a Person that held a Claim against Debtors that arose on or before the Petition Date or a Claim against the Estate of any kind specified in Code §§ 502(g), 502(h), or 502(i).

19.     **Debtors** shall mean Lynn Marie Lotz and Charles Edward Lotz.

20.     **Disbursing Agent** shall mean the person to be designated and retained, as of the Effective Date with approval of the Bankruptcy Court, as the fiduciary responsible for,

among other things, holding and distributing the security and certain consideration to be distributed to the holders of Allowed Claims pursuant to Article VII of the Plan, the Confirmation Order, or such other order as may be entered by the Bankruptcy Court.

21. **Disputed Claim** shall mean a Claim against Debtors that is not an Allowed Claim and as to which there is no Final Order disallowing such Claim.

22. **Distribution** shall mean the Cash and other consideration distributed by Debtors under the Plan from time to time.

23. **Distribution Account** shall mean a checking account at an FDIC banking institution from which Debtors, or in the event the Subchapter V Trustee is directed, will make Distributions.

24. **Effective Date** shall mean the first Business Day following the day that the Confirmation Order becomes a Final Order.

25. **Estate** shall mean the estate created upon the commencement of the Case pursuant to Code §§ 541(a) and 1115.

26. **Estate Property** shall mean all of the property of the Estate.

27. **Excess Monthly Income** shall mean the Debtor's total monthly income earned from and after the Effective Date through the end of the term of this Plan, less a reserve for business expenses and required withholdings, payments for taxes and living expenses, including payments on Claims assessed against the Estate for Secured Claims, Administrative Expense Claims, Priority Tax Claims, and other Claims entitled to priority under Code § 507(a).

28. **Final Order** shall mean an order or judgment of a Court, as entered by the clerk of such Court on a docket related to the Case, as to which; (a) the time for any appeal or petition for review has expired and no appeal or petition for review is pending or timely was filed, or (b) any appeal or petition for review finally has been determined or dismissed.

29. **First Bankers Trust Collateral** shall mean 326 W. Jefferson St., 719 S. Dudley St., E. Carroll, and 605 West Jackson Street, Macomb, Illinois 61455

30. **Fortress Bank Collateral** shall mean 2000 Lakewood Drive, Macomb, Illinois 61455.

31. **General Unsecured Claim** shall mean a Claim, other than (a) a Secured Claim, (b) an Administrative Expense Claim, (c) a Priority Claim, (d) a Priority Tax Claim, or (e) a Convenience Claim.

32. **Governmental Unit** shall have the meaning ascribed in Code §101(27). Governmental Unit includes the United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency or instrumentality of the United States (but not a United States trustee while serving in a case under the Code), a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government.

33.    **Impaired** shall have the meaning ascribed to it in Article VIII of Plan.

34.    **Independent Bank Collateral** shall mean 1101 Woodcreek Circle, Flowermound, TX 75028.

35.    **Marine Bank Collateral** shall mean the Assets of the Debtors set forth on **Exhibit A** of the Plan and as Exhibit 1 of the Proof of Claim of Marine Bank, Claim No. 16-1, Part 2.

36.    **Marine Bank Forbearance Agreement** shall mean that forbearance agreement entered into between Marine Bank and Debtors set forth as Exhibit 3 of the Proof of Claim of Marine Bank, Claim No. 16-1, Part 2.

37.    **Petition Date** shall mean August 18, 2021, the date upon which Debtors filed the Case with the Bankruptcy Court.

38.    **Person** shall mean an individual, corporation, limited liability company, limited or general partnership, joint stock company, joint venture, trust, estate, incorporated association or organization, and/or other entity, but does not include a Governmental Unit other than as stated in Code § 101(41)(A-C).

39.    **Plan** shall mean this Subchapter V Chapter 11 Plan of Reorganization for Lynn Marie Lotz and Charles Edward Lotz dated December 21, 2021 in its present form and as it may be further amended or modified from time to time in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the provisions contained herein.

40.    **Plan Period** shall mean the five (5) year period immediately following the Effective Date.

41.    **Priority Claim** shall mean a Claim that arises under Code § 507(a), other than an Administrative Expense Claim or a Priority Tax Claim.

42.    **Priority Tax Claim** shall mean a Claim of a Governmental Unit against Debtors of the kind entitled to priority under Code § 507(a)(8), including, to the extent entitled to priority under Code § 507(a)(8), those Claims that are assessed post-Effective Date for the prepetition period.

43.    **Proof of Claim** shall mean a Claim asserted by a Claimant in writing and filed with the Bankruptcy Court.

44.    **Pro Rata** shall mean the proportion that an Allowed Claim in a Class bears to the aggregate amount of all Allowed Claims in such Class. To the extent that one or more Disputed Claims exists in such Class, pro *rata* shall mean the same proportion that an Allowed Claim in a particular Class bears to the aggregate amount of the sum of all Allowed Claims and all Disputed Claims in such Class until all such Disputed Claims become Allowed Claims or are disallowed or withdrawn.

45.    **Reorganized Debtors** shall mean Debtors as they will exist on and after the Effective Date of the Plan.

6

46. **Schedules** shall mean the schedules of assets and liabilities and the statement of financial affairs filed by Debtors pursuant to Code § 521 and Bankruptcy Rules 1007 and 1009, including all amendments and supplements thereto as of the Confirmation Date.

47. **Secured Claim** shall mean a Claim as to which the Claimant has purported to assert a validly perfected and enforceable lien or security interest pursuant to Code §§ 101 (37), (50) and (51) and that is secured in whole or in part by Estate Property. A Secured Claim shall only be such a Claim in an amount that does not exceed the value of the Estate Property securing such Claim and to the extent of the value of the lien, encumbrance or security interest of the holder of such Claim in such Estate Property, as determined in accordance with Code § 506. To the extent that the value of a Claimant's Secured Claim exceeds the value of the Estate Property subject to such Claim, such Secured Claim shall be treated as an Unsecured Claim except to the extent such Creditor is entitled to make an election to receive the treatment set forth in Code § 1111(b)(2) and the Creditor so elects.

48. **Secured Claimant** shall mean a Claimant that held, as of the Petition Date, a Secured Claim.

49. **Secured Real Estate Tax Claim** shall mean a Claim for real estate taxes by a Governmental Unit secured by real estate owned by the Estate.

50. **Unsecured Claim** shall mean a Claim other than (a) a Secured Claim, (b) an Administrative Expense Claim, (c) a Priority Claim, and (d) a Priority Tax Claim.

51. **Unsecured Claimant** shall mean a Claimant that held, as of the Petition Date, an Unsecured Claim.

52. **U.S. Bank Collateral** shall mean that 2018 Ford 3-350 Super Duty, 1FT8W3DT2JEB65253.

53. **U.S. Trustee Fees** shall mean fees arising under 28 U.S.C. §1930(a)(6).

54. **§** shall mean section.

**B.**   **Severability.** If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability or operative effect of any other provision of this Plan.

**C.**   **Binding Effect.** The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

**D.**   **Applicable Law.** Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Illinois govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

E.     **Captions.** The headings contained in this Plan are for convenience of reference only and do not affect the meaning, construction, or interpretation of this Plan.

**ARTICLE III**
**BACKGROUND**

A.     **Debtors**

Debtors are individuals residing in Macomb, Illinois. Debtors' business is two-fold. First, Debtor Charles Lotz practices as a veterinarian and has been doing so since 1971 which produces income for Debtors' household. In addition, Debtors generate additional income from various properties in Macomb, Illinois that Debtors have purchased, renovated, and rented out to largely the student community of the area. As a result of the COVID-19 pandemic, Debtors' rental business was negatively affected in significant ways due to the lack of in-person attendance at the university.

B.     **Events Leading to the Bankruptcy Case**

The CARES Act, enacted in response to the pandemic, expanded eligibility for relief under Subchapter V of Chapter 11 of the Bankruptcy Code. Prior to the CARES Act, Debtors' existing debt would have made them ineligible for relief under Subchapter V.

Debtors filed their bankruptcy case on August 18, 2021.  A combination of lower occupancy in rental properties and unsuccessful negotiations with creditors and resulting judgments led Debtors to file for Chapter 11.  Debtors are now addressing their financial situation as a whole and Debtors felt that a Subchapter V Chapter 11 reorganization was the best business decision for their long-term future.

B.     **Significant Events in the Bankruptcy Case, Restructuring**

Debtors have managed their financial affairs and taken steps to place themselves in a position to reorganize their debts pursuant to the terms of this Plan.

During the course of the Case, Debtors sought relief in the form of "first-day motions" to use cash collateral and other relief to stabilize their affairs and also sought retention of professionals, including their legal counsel, Carmody MacDonald, P.C.  The Honorable Bankruptcy Court herein granted the relief requested in Debtors' motions. Thereafter, Debtors attended the initial Debtors interview, prepared and filed their monthly operating reports, and attended the § 341 meeting of creditors.

No Creditors' committee was appointed in Debtors' Case and no adversary proceedings have been filed.

Debtors have consented to relief from the automatic stay for United Community Bank to continue to exercise its state court remedies with respect to its collateral. *See Dkt Nos.* 79-80.

**C.    Projected Recovery of Avoidable Transfers**

Debtors do not intend to pursue further preference, fraudulent transfer, or other avoidance actions.

   1.    **Preferential Transfers**

   (a)    *Actions Against Non-Insiders:* None.

   Debtors do not intend to pursue any further preferential transfer actions against non-insiders and do not believe any such cause of action exists.

   (b)    *Actions Against Insiders:* None.

   Debtors do not intend to pursue any preferential transfer actions against insiders and do not believe any such cause of action exists.

   2.    **Fraudulent Conveyances**

Debtors do not believe that any fraudulent conveyances were made and, therefore, do not intend to pursue any suits to recover transfers that occurred during the two years prior the Petition Date.

**D.    Claims and Claims Objections**

The Bar Date for filing Proofs of Claim for Creditors, other than Creditors who are Governmental Units, was October 27, 2021. The deadline for a Governmental Unit to file a Proof of Claim is 190 days after the order of relief was entered.  The deadlines for filing an Administrative Expense Claim are set forth in Article IV, C of the Plan.

Debtors have scheduled Disputed Claims and undisputed Claims in the amount of $6,874,029.29 Secured, $0.00 Priority, and $936,186.75 General Unsecured.

The claims register in Debtors' Case reports the following Claims filed: $8,657,338.45 Secured, $310.20 Priority, and $744.41 General Unsecured.  Many Claims are filed for the same or similar amount as that scheduled by Debtors. This Plan resolves all Claims that have been filed.

Except to the extent that a Claim has been Allowed pursuant to a Final Order, Debtors reserve the right to object to Claims. Therefore, even if your Claim has not been objected to and/or is deemed "Allowed" for voting purposes, you may not be entitled to a Distribution if the Plan does not so provide and/or if an objection to your Claim is later upheld. The procedures for resolving Disputed Claims are stated in Article V of the Plan.

Objections to any Claims not otherwise settled or resolved through the Plan will be filed within ninety (90) days after the Effective Date of the Plan or such later date as is authorized by the Court.

**E.     Current and Historical Financial Conditions**

Since the filing of the case, the Debtors have worked with their financial consultants and lowered operating costs. The Debtors' most recent post-petition operating report is attached as **Exhibit B**.

## ARTICLE IV
## THE PLAN OF REORGANIZATION AND
## TREATMENT OF CLAIMS AND
## INTERESTS

**A.     What is the Purpose of the Plan of Reorganization?**

As required by the Code, the Plan places Claims and interests in various Classes and describes the treatment that each Class will receive. The Plan also states whether each Class of Claims or interests is Impaired. If the Plan is confirmed, your recovery on a Claim, once such Claim is Allowed, will be limited to the amount provided by the Plan. Distributions will only be made on and to the extent that a Claim is Allowed.

**B.     Explanation of Classes of Claims and Equity Interests.**

1.     **Classes of Secured Claims.** Allowed Secured Claims are Claims secured by Estate Property to the extent Allowed as Secured Claims under Code § 506. If the value of the collateral securing the Creditor's Claim is less than the amount of the Creditor's Allowed Claim, the deficiency will be classified as an Unsecured Claim unless the Creditor is entitled to elect to receive the treatment set forth in Code § 1111 (b)(2) and the Creditor so elects.

2.     **Classes of Priority Claims.** Claims that are referred to in Code § 507(a), other than Claims of a kind specified in Code §§ 507(a)(2), 507(a)(3), or 507(a)(8) are required to be placed in Classes.

3.     **Classes of Unsecured Claims.** Unsecured Claims are not secured by Estate Property and are not entitled to priority under the Code § 507(a).

**C.     Unclassified Claims.**

Certain types of Claims are automatically entitled to specific treatment under the Code. They are not considered Impaired, and holders of such Claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, Debtors has *not* placed the following Claims in any class:

1.     **Administrative Expenses,** Administrative Expense Claims are costs or expenses of administering Debtors' Chapter 11 Case which are Allowed under Code § 507(a)(2). Administrative Expense Claims include the value of any goods sold to Debtors in the ordinary course of business and received within twenty days before the date of the bankruptcy petition. Administrative Expense Claims in the Case will consist of (i)

professional fees, (ii) Court costs, (iii) pre-confirmation United States Trustees' fees, and (iv) any unpaid post-petition expenses. Debtors estimate that the Administrative Expense Claims required to be paid on the Effective Date of the Plan will be approximately $10,000.00.

Administrative Expense Claims will be paid in full upon the Effective Date to the extent such Claims are Allowed Administrative Expense Claims on that date, except with respect to Claimants who elect to receive different treatment and/or Claimants whose Administrative Expense Claims were incurred by Debtors in the ordinary course of business. An Administrative Expense Creditor agreeing not to be paid on the Effective Date will be paid on a schedule agreeable to such Creditor and Debtors, after such Administrative Expense Claim is Allowed. Such Claims will be paid by Debtors in the ordinary course of business consistent with past practice and in accordance with the terms and subject to the conditions of any orders or agreements governing, instruments evidencing, or other documents relating to such transactions,

Administrative Expense Claims that are not Allowed Administrative Expense Claims as of the Effective Date will be paid on or before thirty days after they are Allowed, unless deferred payment arrangements have been made or such Claim is a liability incurred in the ordinary course of business. In the event that an Administrative Expense Claim is a Disputed Claim on the Effective Date, sufficient funds shall be reserved by Debtors to pay such Administrative Expense Claim in full upon its allowance, unless deferred payment arrangements have been made. Notwithstanding the foregoing, United States Trustee fees and Bankruptcy Court costs shall be paid fully current on or before the Effective Date.

**Administrative Claims Bar Date.** Any Claimants or Creditors seeking an Allowed Administrative Expense Claim, other than professionals employed in this Case pursuant to order of the Bankruptcy Court, must file their application for an Administrative Expense Claim on or before thirty (30) days after the Effective Date or otherwise be barred from asserting any Administrative Expense Claim in this matter. Within five days after the Effective Date, Debtors shall serve notice of the Bar Date for Administrative Expense Claims on all known parties asserting Administrative Expense Claims.

**Professional Fees.** Any professionals employed in this Case pursuant to order of the Bankruptcy Court must file their applications for Allowed Administrative Expense Claims for periods through and including the Effective Date on or before sixty days after the Effective Date or otherwise be barred from asserting any Administrative Expense Claim in this matter. Professionals holding prepetition retainers from Debtors shall apply such retainers to any pre-confirmation fees accrued but unpaid as of the Effective Date, subject to final approval by and accounting to the Bankruptcy Court of such fees.

2.   **United States Trustee Fees.** Debtors are not required to pay pre- or post-confirmation United States Trustee fees pursuant to 28 U.S.C, § 1930(a)(6) since this Case is filed under Subchapter V of the Bankruptcy Code.

3.   **Allowed 11 U.S.C. §507(a)(8) Priority Claims.** Unsecured Priority Tax Claims are Claims for unsecured income, employment, and other taxes described by Code § 507(a)(8). Unless the holder of such an Unsecured Priority Tax Claim agrees otherwise,

it must receive the present value of its Claim, in regular installments paid over a period not exceeding five years from the Petition Date.

Except to the extent that the holder of an Allowed Unsecured Priority Tax Claim agrees to less favorable treatment, each holder of an Allowed Priority Tax Claim shall receive deferred quarterly Cash payments following the Effective Date over a period no longer than five years after the Petition Date, beginning on the later of the first day of the first calendar quarter following the Effective Date or thirty days after the Unsecured Priority Tax Claim is Allowed and continuing thereafter on the first day of each calendar quarter until the Allowed Unsecured Priority Tax Claim is paid in full with interest at the statutory rate (currently, 4% per annum compounded daily for the Internal Revenue Service).

**D.    Treatment of Classified Claims.**

All Claims and Interests, other than the unclassified Claims described above, are placed in the Classes described herein. A Claim is classified in a particular Class only to the extent that the Claim qualifies within the description of that Class and may be classified in another Class to the extent that any portion or remainder of the Claim qualifies within the description of such other class. A Claim is placed in a particular Class for purposes of receiving Distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released, or otherwise satisfied.

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| Class 1 | Priority Non-Tax Claims | Unimpaired | No |
| Class 2 | Secured Claim of Marine Bank | Impaired | Yes |
| Class 3 | Secured Claim of First Bankers Trust | Impaired | Yes |
| Class 4 | Secured Claim of United Community Bank | Impaired | Yes |
| Class 5 | Secured Claim of Independent Financial | Impaired | Yes |
| Class 6 | Secured Claim of Fortress Bank | Impaired | Yes |
| Class 7 | Secured Claim of US Bank | Impaired | Yes |
| Class 8 | General Unsecured Claims | Impaired | Yes |
| Class 9 | Allowed Interests | Unimpaired | Deemed to Accept |

**1.    Class 1 – Priority Non-Tax Claims**

Debtors are not aware of any unpaid Class 1 Claims. In the event that Priority Non-Tax Claims are filed and Allowed in the Case and remain unpaid on the Effective Date, such Claims will be treated as provided herein.

(a)    Treatment: Except to the extent that a holder of an Allowed Priority Non-Tax Claim agrees to less favorable treatment on account of such Claim and/or to the extent that such Priority Claim has been paid in full on or before the Effective

Date, the holder of such Allowed Priority Non-Tax Claim shall receive Cash in an amount equal to such Claim on the Effective Date.

Debtors estimate that the monthly Plan Payment for Class 1 Priority Non-Tax Claims is $0.00.

(b)   Voting: The Allowed Priority Non-Tax Claims are not Impaired, and the holders of such Claims, if any, are not entitled to vote to accept or reject the Plan on account of such Claim.

2.   **Class 2 - Secured Claim of Marine Bank**

(a)   Treatment: Marine Bank is a Secured Claimant holding liens on the Marine Bank Collateral. Marine Bank's Secured Claim is Allowed in the amount of $2,717,151.48.

The liens of Marine Bank against the Marine Bank Collateral shall continue unimpaired.

The Allowed Secured Claim of Marine Bank shall be paid on the following terms:

Within thirty (30) days of the Effective Date, $50,000.00 to be deposited in the maintenance account for the Marine Bank Collateral.

Within thirty (30) days of the Effective Date, $75,000.00 paid down on principal towards the Allowed Secured Claim.

The above referenced payments shall be funded from Debtors' exempt assets.

Commencing 30 days after the Effective Date of the Plan, Debtors shall resume their payments and obligations under the Marine Bank Forbearance Agreement, to the extent not inconsistent herein, until March 31, 2022.

Note 75: i) principal balance of $38,054.85 equal to the value, as of the Petition Date, of the Allowed Secured Claim, less any payments received; ii) equal monthly payments of principal and interest at the rate of 3.5% based on a 25-year amortization, commencing on April 1, 2022 and on the same date of each month thereafter; iii) principal and interest due five (5) years following the Effective Date and five (5) year renewal not to exceed 4%. Debtors' monthly payment to Marine Bank on Note 75 would be approximately $190.51 under the Plan.

Note 80: i) principal balance of $1,713,299.81 equal to the value, as of the Petition Date, of the Allowed Secured Claim, less any payments received; ii) equal monthly payments of principal and interest at the rate of 3.5% based on a 25-year amortization, commencing April 1, 2022 and on the same date of each month thereafter; iii) principal and interest due five (5) years following the Effective Date and five (5) year renewal not to exceed 4%. Debtors' monthly payment to Marine Bank on Note 80 would be approximately $8,577.18 under the Plan.

13

Note 90: i) principal balance of $37,697.44 equal to the value, as of the Petition Date, of the Allowed Secured Claim, less any payments received; ii) equal monthly payments of principal and interest at the rate of 3.5% based on a 25-year amortization, commencing on April 1, 2022 and on the same date of each month thereafter; iii) principal and interest due five (5) years following the Effective Date and five (5) year renewal not to exceed 4%. Debtors' monthly payment to Marine Bank on Note 90 would be approximately $188.72 under the Plan.

SCB Note (vet clinic loan) will return to its original amortization schedule and Debtors will reaffirm their guaranties of the SCB Note.

Marine Bank to provide release values on all Marine Bank Collateral to facilitate decisions on controlled sale and liquidation of properties if financially and business appropriate with quarterly meetings with Marine Bank to discuss the same.

(b)   Voting: Marine Bank's Allowed Secured Claim is Impaired and the holders thereof are entitled to vote on the Plan.

3.   **Class 3 - Secured Claim of First Bankers Trust**

(a)   Treatment: First Bankers Trust is a Secured Claimant holding a senior lien on the First Bankers Trust Collateral. First Banker's Secured Claim is allowed in the amount of $128,247.25 less any and all payments made by Debtors to First Bankers Trust after the Petition Date.

The liens of First Bankers Trust shall continue unimpaired. Debtors will continue to make monthly payments to First Bankers Trust in accordance with their prepetition loan documents.

(b)   Voting: First Bankers Trust's Allowed Secured Claim is Impaired and the holders thereof are entitled to vote on the Plan.

4.   **Class 4- Secured Claim of United Community Bank**

(a)   Treatment: United Community Bank is a Secured Claimant holding senior liens on the United Community Bank Collateral. Debtors have consented to relief from stay with respect to the United Community Bank Collateral in full satisfaction of the United Community Bank Secured Claim. Any deficiency that United Community Bank may claim with respect to the Class 4 Claim shall be treated as a Class 8 General Unsecured Claim.

(a)   Voting: United Community Bank's Allowed Secured Claim is Impaired, and the holders thereof are entitled to vote to accept or reject the Plan.

14

5.      **Class 5- Secured Claim of Independent Bank**

    (a)   <u>Treatment</u>: Independent Bank is a Secured Claimant holding a senior lien on the Independent Bank Collateral.  Independent Bank's Secured Claim is Allowed in the amount of $53,675.97 less any and all payments made by Debtors to Independent Bank after the Petition Date.

        Claim 5 shall be paid equal to the value, as of the Petition Date, of the Allowed Secured Claim, less any payments received; ii) equal monthly payments of principal and interest at the rate of 3.5% based on a 25-year amortization, commencing April 1, 2022 and on the same date of each month thereafter; iii) principal and interest due five (5) years following the Effective Date.

        The liens of Independent Bank shall continue unimpaired.

    (b)   <u>Voting</u>: Independent Bank's Allowed Secured Claim is Impaired and the holders thereof are entitled to vote on the Plan.

6.      **Class 6- Secured Claim of Fortress Bank**

    (a)   <u>Treatment</u>: Fortress Bank is a Secured Claimant holding a senior lien on the Fortress Bank Collateral, which constitutes Debtors' residence.  Fortress Bank's Secured Claim is Allowed in the amount of $332,824.33 less any and all payments made by Debtors to Fortress Bank after the Petition Date. Debtors are current on their payments to Fortress Bank.

        The liens of Fortress Bank shall continue unimpaired. Debtors will continue to make monthly payments to Fortress Bank in accordance with their prepetition loan documents. Any pre-petition arrearages will be paid in full within six (6) months of the Effective Date of the Plan.

    (b)   <u>Voting</u>: Fortress Bank's Allowed Secured Claim is Impaired and the holders thereof are entitled to vote on the Plan.

5.      **Class 7- Secured Claim of U.S. Bank**

    (a)   <u>Treatment</u>: U.S. Bank is a Secured Claimant holding a senior lien on the U.S. Bank Collateral.  U.S. Bank's Secured Claim is Allowed in the amount of $23,008.97 less any and all payments made by Debtors to U.S. Bank after the Petition Date. Debtors are current on their adequate protection payments to U.S. Bank.

        The liens of US Bank shall continue unimpaired. Debtors will continue to make monthly payments to Independent Bank in accordance with their prepetition loan documents. Any pre-petition arrearages will be paid in full within six (6) months of the Effective Date of the Plan.

    (b)   <u>Voting</u>: Independent Bank's Allowed Secured Claim is Impaired and the holders thereof are entitled to vote on the Plan.

### Class 8 –General Unsecured Claims

    (a)   <u>Treatment</u>: Unsecured Claims are not secured by Estate Property and are not entitled to priority under Code § 507(a). As further outlined in the procedure set forth in Article VII below, the holders of Allowed General Unsecured Claims will receive their Pro Rata share of Excess Monthly Income of at least $6,750.00 on the first day of the month after Class 1 Claims are paid in full, and quarterly thereafter for five (5) years or the holders of Allowed Class 8 Claims are paid in full, whichever is shorter.

    (b)   <u>Voting</u>: General Unsecured Claims in Class 8 are Impaired, and the holders thereof are entitled to vote to accept or reject the Plan.

7.    **Class 9- Allowed Interests**

    (a)   <u>Treatment</u>: Class 9 consists of all Allowed Interests in Debtors. All Class 9 Allowed Interests will be retained on the Effective Date and therefore are unimpaired under the Plan.

    (b)   <u>Voting</u>: Class 9 is deemed to have accepted the Plan, and therefore is not entitled to vote.

### ARTICLE V
### ALLOWANCE AND DISALLOWANCE OF CLAIMS

**A.**    **Disputed Claim.** A Disputed Claim is a Claim that has not been Allowed or disallowed by a Final Order, and as to which either: (i) a Proof of Claim has been filed or deemed filed, and Debtors or another party in interest has filed an objection; or (ii) no Proof of Claim has been filed, and Debtors have scheduled such Claim as disputed, contingent, or unliquidated on the rejection of a contract or lease. Disputed Claims will be barred if the Proof of Claim is not timely filed, unless the Bankruptcy Court orders otherwise.

    1.    **Deadline to Object to Rejection.** If you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to confirmation of the Plan provided in Article I.

16

## ARTICLE VII
## MEANS FOR IMPLEMENTATION OF THE PLAN

**A.**      **Source of Payments.** All of Debtors' Excess Monthly Income will be used to fund the Plan.

**B.**      **Procedure for Payment of Claims**. The Reorganized Debtors shall establish a bank account at an FDIC insured institution. Debtors will fund the Distribution Account on or before the 20th day of each month. Debtors and Debtors' accountant shall be authorized to write checks from the Distribution Account. On the last day of the third full month after the Effective Date and every 90 days thereafter, Debtors or Debtors accountant shall mail a pro-rata Distribution to creditors holding Allowed Claims.

**C.**      **Disputed Claims Deposit**. The Reorganized Debtors shall deposit funds in the Distribution Account equal to the amount the payments which would have been made to such Creditor had the Creditor's Claim been Allowed on the Effective Date and shall reserve said funds until such time as the Disputed Claim shall become an Allowed Claim, the Reorganized Debtors shall release the reserved funds to such Creditor and pay the remaining Allowed Claim of said Creditor pursuant to paragraph B above. Upon the entry of a Final Order disallowing any Disputed Claim, the holder of said Claim shall immediately forfeit any claim, right, title, or interest in any distributions under this Plan and the Reorganized Debtors shall treat any reserved funds as Cash and distribute same pursuant to paragraph B above.

**D.**      **Post-Confirmation Business Operations.** Debtors will continue to operate their business as the Reorganized Debtors.

**E.**      **Risk Factors.** The primary risks under the Plan are that the income from Reorganized Debtors' business operations will not meet current projections and will be insufficient to fund Debtors' obligations under the Plan. In such case, the Reorganized Debtors anticipate that they will reduce expenses, where possible, to meet their obligations under the Plan.

**F.**      **Feasibility.** Based upon Debtors' historical income and projected future income, the repayment proposed is reasonable. Estimated Plan Projections are included as **Exhibit C** to the Plan.

**G.**      **Tax Consequences of Plan.** Debtors are not aware of any adverse tax consequences that will result from confirmation of the Plan. Creditors and equity interest holders concerned with how the Plan may affect their tax liability should consult with their accountants, attorneys, or advisors.

**H.**      **Unexpired Leases.** On the Effective Date, the Reorganized Debtors shall assume all executory contracts and unexpired leases that have not previously been rejected. Upon written request, and prior to confirmation of the Plan, Debtors will provide written confirmation to any non-Debtors party with a contract or lease being treated and assumed under this section that the non-Debtors party's contract or lease is being treated and assumed under this section of the Plan.

**I.**    **Delivery of Distributions and Undeliverable Distributions.** Distributions to holders of Allowed Claims shall be made at the address of each such holders as set forth on the Schedules, filed with the Bankruptcy Court, unless superseded by a new address as set forth (a) on a proof of claim filed by a holder of an Allowed Claim, or (b) in another writing notifying the Bankruptcy Court or Reorganized Debtors of a change of address. If any holder's distribution is returned as undeliverable, no further distributions to such holder shall be made unless and until the Reorganized Debtors is notified of such holder's then-current address, at which time all missed distributions shall be made to such holder, without interest. If a distribution cannot be made within one hundred and eighty-two days after the date such undeliverable distribution was made, any such holder's Claim shall be expunged and the funds otherwise distributable on such Claim shall be retained and/or relinquished to the Reorganized Debtors.

**J.**    **Defaults.** Upon the event of default related to any or all of the Reorganized Debtors' payment obligation or other obligations under the Plan, any Creditor shall first provide Reorganized Debtors' counsel with a notice to cure, giving the Debtors ten (10) business days to cure the default. In the event that said default is not so cured then the Creditor shall be permitted to accelerate the amounts due and owing under their Allowed Claim and pursue their rights and remedies against the Reorganized Debtors under applicable State law.

## ARTICLE VIII
## CONFIRMATION REQUIREMENTS AND PROCEDURES

**A.**    **Overview of Requirements.** To be confirmable, the Plan must meet the requirements listed in Code §§ 1129(a) or (b). These include the requirements that (1) the Plan must be proposed in good faith; (2) at least one Impaired Class of Claims must accept the Plan, without counting votes of insiders; (3) the Plan must distribute to each Creditor at least as much as the Creditor would receive in a Chapter 7 liquidation case, unless the Creditor votes to accept the Plan; and (4) the Plan must be feasible. These requirements are not the only requirements listed in Code § 1129, and they are not the only requirements for confirmation.

**B.**    **Who May Vote or Object.** Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met. Many parties in interest, however, are not entitled to vote to accept or reject the Plan. A Creditor has a right to vote for or against the Plan only if that Creditor has a Claim that is both (1) Allowed or Allowed for voting purposes and (2) included in an Impaired Class that will retain value under the Plan.

**C.**    **What Is an Allowed Claim?** Only a Creditor with an Allowed Claim has the right to vote on the Plan. Generally, a Claim is Allowed if either (1) Debtors have scheduled the Claim on the Schedules, unless the Claim has been scheduled as a disputed, contingent, or unliquidated, or (2) the Creditor has filed a Proof of Claim, unless an objection has been filed to such Proof of Claim. When a Claim is not Allowed, the

Creditor holding the Claim cannot vote unless the Court overrules the objection or allows the Claim for voting purposes under Bankruptcy Rule 3018(a).

**D.**   **What Does Impaired Mean?** As noted above, the holder of an Allowed Claim has the right to vote only if it is in a Class that is Impaired under the Plan. "Impaired" means the Plan alters the legal, equitable, or contractual rights of the members of that Class.

**E.**   **Who is Not Entitled to Vote.** The following types of Creditors are not entitled to vote:

1.   Holders of Claims that have been disallowed by an order of the Court;

2.   Holders of other Claims that are not "Allowed Claims," unless they have been "Allowed" for voting purposes;

3.   Holders of Claims in Classes that are not Impaired;

4.   Holders of Unsecured Claims entitled to priority pursuant to Code §§ 507(a)(2), (a)(3), and (a)(8);

5.   Holders of Claims in Classes that do not receive or retain any value under the Plan;

6.   Holders of Administrative Expense Claims.

<u>Even if you are not entitled to vote on the Plan, you have a right to object to the confirmation of the Plan</u>.

**F.**   **Who Can Vote in More Than One Class.** A Creditor whose Claim has been Allowed in part as a Secured Claim and in part as an Unsecured Claim, or who otherwise hold Claims in multiple Classes, is entitled to accept or reject a Plan in each capacity, and should cast one Ballot for each Claim.

**H.**   **Liquidation Analysis.** To confirm the Plan, the Court must find that all Creditors who do not accept the Plan will receive at least as much under the Plan as such Claim and equity interest holders would receive in a Chapter 7 liquidation. A liquidation analysis is included in **Exhibit D** to the Plan. Debtors believe that the analysis in **Exhibit D** provides an estimate of the most that Creditors conceivably could receive after liquidation in a Chapter 7. Creditors should keep in mind that liquidation in Chapter 7 would involve fees, expenses and costs that will not have to be paid under this Plan including, without limitation, (a) sales commissions on assets, estimated to be approximately seven to fifteen percent of the gross sales price, (b) fees for a Chapter 7 Trustee as described in Code § 326, and (c) fees for a Chapter 7 Trustee's attorney and other professionals. Additionally, Debtors believe it is important to understand the limited use for the Debtors' veterinary practice when considering its liquidation value and the time it would take to market and sell the business and related properties.

Debtors believe Creditors will receive more under the Plan than they otherwise would if Debtors' assets were liquidated and the proceeds distributed to Creditors. Debtors

believe that Creditors holding Allowed Administrative Expense Claims, Priority Claims, and Unsecured Claims would receive nothing upon liquidation.

**I.**     **Ability to Fund Plan and Operate without Further Reorganization.** The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of Debtors or any successor to Debtors, unless such liquidation or reorganization is proposed in the Plan. Debtors believe that they have enough Cash on hand to pay all the Claims and expenses that are entitled to be paid on or within thirty days of the Effective Date, with the exception of the professional fees of Carmody MacDonald, P.C. Debtors also must show that they will have enough Cash over the life of the Plan to make the required Plan payments.

1.     **General Unsecured Claims.** Debtors anticipate that they will have sufficient income from their business to fund Debtors' Plan obligations to General Unsecured Claims.

2.     **Administrative Expense.** With the exception of the legal fees of Carmody MacDonald, P.C., who will agree that Debtors can pay its Claim over time, Debtors believe that they have enough Cash on hand to pay costs of administration as provided for in the Plan. Once Allowed, Debtors will pay Carmody MacDonald, P.C. the balance of its fees on or after the Effective Date on such terms as are acceptable to Carmody MacDonald, P.C.

3.     **Secured Claims.** Debtors anticipate they will have sufficient funds from the operation of their business to fund Allowed Secured Claims.

4.     **Priority and Secured Tax Claims.** Debtors anticipate they will have sufficient funds from the operation of their business to fund Allowed Priority and Secured Tax Claims.

## ARTICLE IX
## DISCHARGE AND OTHER EFFECTS OF CONFIRMATION

**DISCHARGE. UNLESS THE PLAN IS CONFIRMED BY CONSENT, UPON THE COMPLETION OF THE PAYMENTS REQUIRED UNDER THE PLAN, DEBTORS, THE REORGANIZED DEBTORS, AND THEIR ESTATE, AND ALL OF THEIR PROPERTY, WILL RECEIVE A DISCHARGE OF AND RELEASE FROM ALL ANY AND ALL CLAIMS, LIENS, DEBTS, SECURITY INTERESTS, ENCUMBRANCES, AND INTERESTS THAT AROSE BEFORE THE CONFIRMATION DATE, INCLUDING, BUT NOT LIMITED TO, ALL PRINCIPAL AND ANY INTEREST ACCRUED THEREON, WHETHER OR NOT THE CREDITOR FILES A PROOF OF CLAIM, ACCEPTS THIS PLAN, OR HAS ITS CLAIM ALLOWED, EXCEPT AS PROVIDED IN CODE § 1141. SUCH DISCHARGE WILL NOT DISCHARGE DEBTORS FROM ANY DEBTS THAT ARE NON-DISCHARGEABLE UNDER CODE § 523, EXCEPT AS PROVIDED IN RULE 4007(C) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE. UNDER CERTAIN CONDITIONS, DEBTORS MAY BE GRANTED A DISCHARGE EVEN IF ALL PLAN PAYMENTS TO BE MADE UNDER THE PLAN DURING THE PLAN PERIOD ARE NOT COMPLETED. SUBJECT TO THE PROVISIONS OF THIS ARTICLE, THE PAYMENTS AND**

**DISTRIBUTIONS MADE UNDER THIS PLAN SHALL BE IN EXCHANGE FOR AND IN COMPLETE SATISFACTION, DISCHARGE, AND RELEASE OF ALL CLAIMS AGAINST DEBTORS AND THE REORGANIZED DEBTORS, AND ANY OF THEIR RESPECTIVE ASSETS OR PROPERTY, INCLUDING ANY CLAIM FOR INTEREST ACCRUING AFTER THE PETITION DATE AND PRIOR TO THE EFFECTIVE DATE. ON AND AFTER THE EFFECTIVE DATE, EXCEPT AS EXPRESSLY PROVIDED IN THE PLAN, ALL HOLDERS OF CLAIMS ARISING PRIOR TO THE CONFIRMATION DATE SHALL, TO THE FULLEST EXTENT POSSIBLE UNDER APPLICABLE LAW, BE PERMANENTLY BARRED AND ENJOINED FROM ASSERTING AGAINST THE REORGANIZED DEBTORS OR THEIR ASSETS OR PROPERTY ANY OTHER OR FURTHER CLAIMS, INCLUDING CLAIMS BASED ON ANY ACT OR OMISSION, TRANSACTIONS OR OTHER ACTIVITY OF ANY KIND OR NATURE THAT OCCURRED PRIOR TO THE CONFIRMATION DATE.**

A.   **Operation of Confirmation Order.** Pursuant to Code § 1142(b), the Confirmation Order shall operate as an order of the Court directing Debtors, the Reorganized Debtors, and any other necessary parties, to execute and deliver, or join in the execution and delivery of any instrument required to effect a transfer of the Estate Property, and to perform any other act that is necessary for the consummation of this Plan.

B.   **Vesting of Property.** On the Effective Date, all Estate Property will vest in the Reorganized Debtors pursuant to Code § 1141(b), free and clear of all Claims and interests except as provided in the Plan.  Should this Chapter 11 Case convert to a case under Chapter 7 following confirmation, but before substantial consummation of the Plan, all property of the Chapter 11 estate shall revest in the Chapter 7 estate.

D.   **Binding Effect of Plan / Plan Creates New Obligations.** The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity. The payments provided for in this Plan constitute new contractual obligations that replace those obligations to Creditors that existed prior to the Confirmation Date. On and after the Confirmation Date, the provisions of this Plan shall bind Debtors, the Reorganized Debtors, and all Creditors (whether they have accepted this Plan or not) and the respective heirs, executors, administrators, successors or assigns, if any, of any of the foregoing.

E.   **Modification of Plan.**  Debtors may modify the Plan at any time before confirmation of the Plan. However, the Court may require a new or additional disclosures to Creditors and/or revoting on the Plan. Upon request of Debtors, the United States Trustee, or the holder of any Allowed Unsecured Claim, the Plan may be modified at any time after confirmation of the Plan but before the completion of payments under the Plan, to (1) increase or reduce the amount of payments under the Plan on Claims of a particular class; (2) extend or reduce the time period for such payments; or (3) alter the amount of Distribution to a Creditor whose Claim is provided for by the Plan to the extent necessary to take account of any payment of the Claim made other than under the Plan.

**F.**  **Retention of Jurisdiction.**  The Bankruptcy Court shall retain jurisdiction of this Case pursuant to the provisions of Chapter 11 of the Bankruptcy Code, until the entry of a final decree closing the Estate, and with respect to the following matters:

1. To preserve and enable Debtors to consummate any and all proceedings brought or to commence any action to set aside liens or encumbrances and to recover any transfers, assets or damages to which Debtors may be entitled to under applicable provisions of the Bankruptcy Code, including without limitation, Code §§ 544, 545, 547, 548, 549, and 553(b), or other federal, state or local laws;

2. To adjudicate, hear and determine all controversies concerning the amount, Classification and priority of all Claims against or interest in Debtors and to reexamine any Claims or interests which may have been Allowed including, without limitation, to hear and determine all Claims arising from the rejection of any executory contracts or unexpired leases. The failure by Debtors or any party in interest initially to object or to examine any Claims or interests shall not be deemed to be a waiver of their rights to object to, or cause to be reexamined, any such Claim, in whole or in part;

3. To liquidate damages in connection with any disputed, contingent or unliquidated Claims;

4. To adjudicate all Claims to a security or ownership interest in any Estate Property or property of Debtors or in any proceeds thereof, and to resolve any and all disputes involving any Claims;

5. To conduct hearings on valuation, as necessary, and to determine whether any party-in-interest is entitled to recover against any Person any Claim, whether arising under Chapter 5 of the Bankruptcy Code, state law, out of a voidable preference, out of a fraudulent transfer or otherwise, whether such voidable transfer occurred prior to or after the Petition Date;

6. To adjudicate all Claims or controversies arising out of any purchase, sale or contract made or undertaken by Debtors during the pendency of this Case;

7. To hear and determine any and all pending adversary proceedings or contested matters;

8. To enforce any judgment entered or settlement approved by the Bankruptcy Court;

9. To recover all assets and properties of Debtors wherever located;

10. To hear and determine all applications for compensation of professionals and other Administrative Expenses;

11. To adjudicate all Claims of Debtors against third parties, to the extent the Court has authority to maintain jurisdiction over said Claims;

11.    To adjudicate all Claims of Debtors against third parties, to the extent the Court
has authority to maintain jurisdiction over said Claims;

12.    To determine all matters, controversies, and disputes arising under or in
connection with this Plan, the application or disposition of Estate Property,
and/or to determine any modification of the Plan after Confirmation;

13.    To determine such other matters as may be provided for in this Plan and the
order of Confirmation and for the purposes set forth in Code § 1127(b);

14.    To make such orders as are necessary or appropriate to establish and enforce
the rights and powers of the Reorganized Debtors under the confirmed Plan or
to carry out the provisions of this Plan, including, but not limited to orders
interpreting, clarifying or enforcing the provisions thereof; and

15.    To enter a final decree pursuant to Rule 3022 of the Bankruptcy Rules.

**G.**    **Final Decree.**  Once the Estate has been fully administered, as provided in Rule 3022
of the Federal Rules of Bankruptcy Procedure, Debtors shall file a motion with the Court
to obtain a final decree to close the Case. Alternatively, the Court may enter such a final
decree on its own motion.

## ARTICLE X
## REQUEST FOR CONFIRMATION

The Debtors believe that confirmation and implementation of this Plan is preferable to
dismissal of the case or conversion of the case to Chapter 7 because it will provide the greater
recovery to unsecured creditors, while at the same time reducing the costs and expenses
necessary to pay such Claims.  The Debtors urge all creditors to accept this Plan and to
evidence such acceptance by returning their ballots to the undersigned on or before 5:00 p.m.,
Central Daylight Time, on _____.

_____
Lynn Marie Lotz

_____
Charles Edward Lotz

Respectfully submitted,

By: /s/ Robert E. Eggmann

Robert E. Eggmann, Illinois Bar #6203021
Thomas H. Riske, Illinois Bar #6301953
Carmody MacDonald P.C.
120 South Central Ave., Suite 1800
Clayton, MO  63105
314-854-8600 (Telephone)
314-854-8660 (Fax)
ree@carmodymacdonald.com (Email)
thr@carmodymacdonald.com (Email)
ATTORNEYS FOR DEBTORSS