## IN THE UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| In re:<br><br>LYNN MARIE LOTZ and CHARLES EDWARD LOTZ,<br><br>        Debtors. | Chapter 11<br><br>Case No. 21-80593<br>Hon. Thomas L. Perkins |

### <u>MARINE BANK'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY</u>

Marine Bank, an Illinois banking association ("Marine Bank"), hereby files this motion ("Motion"), pursuant to section 362(d)(2) of the Bankruptcy Code and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for the entry of an order, substantially in the form annexed hereto, lifting the automatic stay with respect to certain real estate which is securing the Debtors' obligations under a prepetition note and confession of judgment, both of which were in default as of the commencement of the above-captioned chapter 11 case. Marine Bank states as follows:

### BACKGROUND

1.     On August 18, 2021 (the "Petition Date"), the Debtors commenced a voluntary chapter 11 case in the United States Bankruptcy Court for the Central District of Illinois.

**A.     The Debtors' Prepetition Loan Obligations to Marine Bank.**

2.     Prior to the Petition Date, Marine Bank as lender extended numerous term loans to the Debtors, all of which were evidenced by promissory notes in favor of Marine Bank and all of which included cross-default terms providing that a default under any loan constituted a default under all other loans. The loan obligations are secured by first-priority and perfected liens in the collateral listed on the Collateral Schedule attached hereto as <u>Exhibit 1</u> (the "**Collatera**l").

3.      Of relevance here, on October 19, 2012, Marine Bank extended a term loan to the Debtors evidenced by a promissory note (No. 37887-80) in the original principal amount of $2,415,946.88 ("Note 80" attached hereto as Exhibit 2). Note 80 is secured by first-priority perfected mortgage liens, assignments of rents, and commercial security agreements with respect to improved and unimproved parcels of real property in Macomb, Illinois, as well as numerous checking accounts in the names of the Debtors maintained at Marine Bank. (Note 80, Ex. 2, at 1; *see also* Collateral Schedule, Ex. 1, at 15.) Corresponding UCC-1 financing statements and mortgages were timely filed to perfect Marine Bank's security interests in the collateral securing Note 80. Further, Note 80 provided that an event of default would include the Debtors' "fail[ure] to comply with or to perform any other term, obligation, covenant or condition . . . contained in any other agreement between Lender [Marine Bank] and Borrower [the Debtors]." (Note 80, Ex. 2, at 1.)

4.      On January 27, 2020 the Circuit Court for the Ninth Judicial Circuit, McDonough County, Illinois entered an order granting separate judgments by confession against each of the Debtors with respect to Note 80 in the aggregate amount of $1,846,354.52, with an outstanding balance as of the Petition Date of $1,713,299.81 (the "Judgments" attached hereto as Exhibit 3). The Judgments have been timely recorded. The Debtors are jointly and severally liable for all principal, interest, and the costs and fees of Marine Bank due under Note 80 and the Judgments.

5.      As of November 23, 2020, the Debtors had committed numerous events of default under Note 80 and their related loan obligations due and owing to Marine Bank. On that date, the Debtors and Marine Bank entered into that certain *Forbearance Agreement*, as amended and restated on July 29th, 2021, attached hereto as Exhibit 4 (the "Forbearance Agreement"). The Forbearance Agreement provides, among other things, that the "[Debtors] acknowledge and agree

that [the Debtors'] liabilities arising out of the Notes, the guaranties, the commercial security agreements, the mortgages, the assignments of rents, all related documents, the Judgments, the Memoranda of Judgments, or any other documents or instruments executed in connection therewith are the valid obligations of [the Debtors] and, as of the date hereof, there are no claims, setoffs, or defenses to payment by [the Debtors] of their liabilities, and that [Marine Bank] may enforce the payment of [the Debtors'] liabilities as set forth in the [Forbearance] Agreement, Notes, the guaranties, the Judgments, the Memoranda of Judgments, or any other document or instrument executed in connection therewith." (Forbearance Agreement, Ex. 4, § 1.2.)

6.     Further, the Debtors "each acknowledge and agree that [the Debtors] have committed the Existing Events of Default under the Notes, commercial security agreements, mortgages, assignment of rents, and other loan documents that form the basis of the Judgments and Memoranda of Judgments, and that those defaults continue to exist as of the date hereof and will continue to exist after the execution of this [Forbearance] Agreement, that any and all cure periods have expired, and that [the Debtors] are presently obligated to pay all liabilities to [Marine Bank] under the Notes, the Judgments, the Memoranda of Judgments, all without setoff, counter claim, or defenses." (*Id.* § 1.3.)

7.     In addition, the Forbearance Agreement provides that the "[Debtors] release, waive and affirmatively agree not to allege or to otherwise pursue any or all defenses … in any current or future litigation, to contest (a) any default which could be declared by [Marine Bank] at the date hereof; (b) any provision of the Notes, the Judgments, the Memoranda of Judgments, any other document or instrument executed in connection therewith, or this Agreement; (c) the right of [Marine Bank] to all of the rents, issues, profits and proceeds from the collateral except as otherwise set forth herein; (d) the security interest of [Marine Bank] in any property, whether real

or personal, tangible or intangible, or any right or other interest, arising in connection with the collateral; or (e) the conduct of [Marine Bank] in administering the financing arrangements by and between the [Debtors] and [Marine Bank]. (*Id.* § 1.6.)

8.      Finally, the Forbearance Agreement provides that if the Debtors committed any further event of default as defined either in the Forbearance Agreement or in the original loan documents, any forbearance period would expire and all amounts under Note 80 and the related loan obligations would accelerate and be immediately due and payable to Marine Bank, including all principal, interest, and the costs and fees of Marine Bank, in accordance with the terms of the original loan documents and not any modified terms agreed to in the Forbearance Agreement. (*Id.* §§ 1.8, 1.10, 2.1; *see also id.* §§ 1.5(g)-(h).)

9.      As of the Petition Date, numerous events of default existed, including but not limited to the Debtors' failure to make timely payments, the Debtors' insolvency, the Debtors' breach of loan covenants, a material adverse change in the Debtors' financial condition, a material worsening of an existing adverse situation pertaining to the Debtors' financial condition, and Marine Bank's belief that the prospect of payment or performance under the Forbearance Agreement was impaired. (*Id.* § 2.1.)

10.     Accordingly, all amounts under Note 80, the Judgments, and the other loan obligations were, as of the Petition Date, immediately due and payable to Marine Bank, including all principal and interest and the costs and fees of Marine Bank. As of the Petition Date, the amount due under the cross-defaulted Note 80, Judgments, and other loan obligations was $2,717,151.48.

11.     On October 26, 2021, Marine Bank timely filed its secured proof of claim for these amounts [Claim No. 16] ("**Marine Bank's Claim**").

12.     On February 22, 2022, the Debtors filed their *First Amended Subchapter V Plan of Reorganization* [Dkt. 168] (the "**Plan**") in which they proposed, among other things, to "attempt to sell" the Relevant Collateral (defined below) sometime during the next three years, but did not provide any specifics about such sale.  (Plan at 14.)

**B.     The Relevant Collateral.**

13.     Note 80 and the Judgments are secured by, among other things, various parcels of unimproved real estate in which the Debtors have an interest. The real estate serving as the Note 80 collateral includes: (i) 23.96 acres of real estate in Macomb, Illinois bearing PIN 11-401-266-00, (ii) 41.69 acres of real estate in Macomb, Illinois bearing PIN 04-000-059-00, and (iii) 19.28 acres of real estate in Macomb, Illinois bearing PIN 04-000-059-05 (together, the "Note 80 Relevant Collateral"). (*See* Collateral Schedule, Ex. 1, at 15.) The Debtors acquired the Note 80 Relevant Collateral between 1994 and 2005 for the aggregate purchase price of $213,160.00. (*See* Note 80 Relevant Collateral Appraisal, attached hereto as Exhibit 5.)

14.     The real estate serving as the Judgment collateral includes 19.28 acres of real estate in Chalmers Township, McDonough County, Illinois bearing PIN 04-000-059-05 (the "Judgment Relevant Collateral" and, together with the Note 80 Relevant Collateral, the "Relevant Collateral"). (*Id.* at 16.) The Debtors acquired the Judgment Relevant Collateral in 2005 for $125,000.00. (*See* Judgment Relevant Collateral, attached hereto as Exhibit 6.)

15.     The Relevant Collateral is all vacant farmland. Since acquiring their interests in the Relevant Collateral, the Debtors have not put the land to any productive use and have not rented the land out. The Relevant Collateral produces no income for the Debtors' estates.

16.     Because of the Debtors' failure to put the Relevant Collateral to any productive use, the Relevant Collateral vastly undersecures the Debtors' obligations to Marine Bank. In the

aggregate, the Debtors purchased the Relevant Collateral for $338,160.00 and Marine Bank's Claim is worth at least $2,717,151.48.

## RELIEF REQUESTED

17.     By this Motion, Marine Bank respectfully requests entry of an order, substantially in the form annexed hereto and pursuant to section 362(d)(2) of the Bankruptcy Code and Bankruptcy Rule 4001, granting relief from the automatic stay to permit Marine Bank to foreclose upon the Debtors' interests in the Relevant Collateral.

## BASIS FOR RELIEF REQUESTED

18.     Section 362(d)(2) of the Bankruptcy Code provides that the Court "*shall* grant relief" from the automatic stay with respect to estate property "if the debtor does not have an equity in such property and such property is not necessary to an effective reorganization." 11 U.S.C. § 362(d)(2) (emphasis added).

19.     Here, both elements are met and Marine Bank is entitled to relief from the automatic stay to foreclose on the Debtors' interests in the Relevant Collateral. *First*, the Debtors do not have equity in the Relevant Collateral because Marine Bank's "debt [is] greater than or equal to the value of the realty" that serves as the Relevant Collateral. *Matter of Vitreous Steel Products Co.*, 911 F.2d 1223, 1232 (7th Cir. 1990). Marine Bank's timely proof of claim for $2,717,151.48 is *prima facie* evidence of the validity and amount of the debts owed to Marine Bank. *See In re Cadwell's Corners P'ship*, 174 B.R. 744, 759 (Bankr. N.D. Ill. 1994). Further, the Debtors stipulated and agreed in the Forbearance Agreement that these amounts due to Marine Bank are "valid obligations" and the Debtors are "obligated to pay all liabilities to [Marine Bank] under the Notes, the Judgments," and related loans. (Forbearance Agreement, Ex. 4, §§ 1.2-1.3.) The Debtors acquired the Relevant Collateral for $338,160.00, far less than the $2,717,151.48 they owe to

Marine Bank. And the Debtors have failed to put the Relevant Collateral to any productive use and increase its value. The Debtors therefore lack equity in the Relevant Collateral.

20.     *Second*, the Relevant Collateral is not necessary to the Debtors' effective reorganization. The Debtors have not made any prior use of the property for the benefit of their creditors, and given that the Relevant Collateral is not generating any income, it is not necessary to fund obligations under the proposed Plan. Further, the Plan itself proposes to sell the Relevant Collateral but only at some time in the future. Finally, it is unclear whether the Debtors will be able to successfully confirm a plan in this case. *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 376 (1988) (holding that section 362(d)(2) requires the debtor to prove that "the property is essential for an effective reorganization *that is in prospect*.") (emphasis in original).

21.     Accordingly, the Court should lift the automatic stay and permit Marine Bank to foreclose on the Debtors' interests in the Relevant Collateral and apply the proceeds to the outstanding and defaulted obligations that the Debtors owe to Marine Bank.

### WAIVER OF STAY UNDER BANKRUPTCY RULE 4001(A)(3)

22.     Under Bankruptcy Rule 4001(a)(3), any order granting relief from the automatic stay is itself automatically stayed for 14 days following entry of the order. Marine Bank respectfully requests that the Court waive the stay imposed by Bankruptcy Rule 4001(a)(3).

### NOTICE

23.     Marine Bank will provide notice of this Motion in accordance with Bankruptcy Rules 2002 and 4001. Marine Bank submits that, under the circumstances, no other or further notice is required.

## CONCLUSION

WHEREFORE, Marine Bank respectfully requests that the Court enter the proposed order annexed hereto, lift the automatic stay with respect to the Relevant Collateral, and grant such further relief as is appropriate and just.

Dated: March 22, 2022                         Respectfully submitted,

                                              **JENNER & BLOCK LLP**

                                              By:  /s/ *Catherine Steege*
                                              Catherine L. Steege (admitted *pro hac vice*)
                                              353 N. Clark Street
                                              Chicago, Illinois 60654
                                              Tel: (312) 923-2952
                                              Fax: (312) 840-7352
                                              csteege@jenner.com

                                              *Counsel to Marine Bank*

## CERTIFICATE OF SERVICE

I, Catherine Steege, certify that I caused a copy of the foregoing motion to be served upon all parties of record via the Court's ECF noticing system on March 22, 2022.

/s/ *Catherine Steege*

### ECF Service List re *In re Lotz*, Case No. 21-80593

- **Sumner A. Bourne** notices@rafoolbourne.com, SBourne@ecf.axosfs.com; archivelegal9@gmail.com

- **Cheryl Considine** bankruptcy@hsbattys.com, bk4hsbm@gmail.com, hbm@ecf.courtdrive.com

- **Joseph A Duesterhaus** jduesterhaus@slpsd.com

- **Robert E Eggmann** ree@carmodymacdonald.com, ala@carmodymacdonald.com; kxd@carmodymacdonald.com

- **Dormie Yu Heng E. Ko** dko@carmodymacdonald.com, ala@carmodymacdonald.com; syd@carmodymacdonald.com

- **Kimberly Litherland** KimberlyLitherland@hsbattys.com, bankruptcy@hsbattys.com; bk4hsbm@gmail.com; hbm@ecf.courtdrive.com

- **William M McCleery** wmccleery@srnm.com

- **Sabrina M Petesch** sabrina.m.petesch@usdoj.gov

- **Thomas H Riske** thr@carmodymacdonald.com, triske@ecf.inforuptcy.com; ala@carmodymacdonald.com; syd@carmodymacdonald.com

- **U.S. Trustee** USTPRegion10.PE.ECF@usdoj.gov

- **Steven M. Wallace** steven@ghalaw.com, denise@ghalaw.com